Navy. Council may take a moment or two to get themselves situated at council table and then let us know when they're ready to proceed. Okay. Okay. Okay.  Mr. Sheldon, whenever you're ready. Good morning. May it please the court. My name is David Patrick Sheldon and along with Dylan Thayer, we represent the appellants in this case, Renu Clark and Jason Gergler, the parents of Tyler Gergler. The parents are here in court along with Tyler's daughter. With leave of the court, I'd like to reserve five minutes of my time for rebuttal. Granted. Words. Words matter. Context matters. In this case, you have a sergeant of Marines telling a pulley in the delayed entry program that he needs to drive to Colts Neck, New Jersey. And he uses pressure. He puts pressure on him. So you're referring to a bunch of specific facts. The district court said it would dismiss under either a facial or factual challenge. So which is this motion to dismiss, facial or is it factual? Should we be looking at these specific? It's unclear, but this court reviews it de novo under the rule of law. But I think that what's important here is to look at the context of what happened and the people that are involved. If Tyler Gergler had told Staff Sergeant, Staff Sergeant, I'm going to go out to the beach. It's beach week and I want to spend the weekend with my girlfriend. I'm not going to drive up. I'll be up on Monday. And the Staff Sergeant said the exact same text that he sent. Would we be here today? I would suggest to the court that we would not be. But it is the foreseeable consequences of what happened. In every case that we brought before this court, the James case, the Snow case, and the Hidusic case, all poolie cases, all physical activity cases, the Marines in those cases. Let's start by talking about this policy O215. You tried to justify your forfeiture. You didn't argue the first prong of the analysis at the district court. But O215 doesn't look like it even applies to Sergeant Castor. It defines an event as a physical activity. And this was not a physical activity. This was like a social recruiting event. That's correct, Your Honor. So O215 doesn't seem to have anything to do with it. I think that my colleague and my friend on the other side, they want to say that it does. Okay. But you're not affirmatively relying on it. I think this court did. That's where she got the common sense language from. But were you relying on it for the proposition that there needed to be notice that this was voluntary? Were you relying on it for that position, for that statement? Certainly, I think that it goes to that extent. Okay. Well, I think that's what Judge Bibas is referring to. When you look at that particular paragraph that says that a poolie has to be told that an event is voluntary, it mentions event. And then if you look at Paragraph 4, Paragraph 4 defines event. And it defines event as a physical activity. So I think what Judge Bibas was asking you was, wait a minute, is that same policy a problem? Does that same policy essentially mean that the requirement to say that it's voluntary doesn't apply? Well, and Castor says in his deposition, or rather his affidavit, that he did tell him. And, you know, as a matter of course, when you're coming into these delayed entry programs, you're going to be told that these are voluntary events. You set that block. All right. So you're not affirmatively resting on that policy. You didn't preserve that. I want to ask about, you know, the defendants moved to dismiss. And you filed an opposition. And I'm looking at your opposition. And at page 6 of it, you jump directly to Step 2 about whether the action is grounded in policy consideration. So haven't you forfeited any argument based on Step 1? Well, I certainly think that the focus, yes, Your Honor, I think the focus, however, is on Part 2. I think that when you look at the objectively, at the facts of this case, and my colleague on the other side, my friend on the other side, he uses the term encouragement. We're talking about a staff sergeant of Marines telling a pulley that he has to get behind a car and drive 150 miles when he knows, the staff sergeant knows, that this pulley is sick, has been sick for 16 hours. All right. But that, you know, let's assume all of that is true. But Step 2 asks, is this a policy consideration? It doesn't ask about the equities of the individual cases. And so how could a decision about how important it is for pulleys to attend social events, how could that issue be anything less than a policy concerns? It seems like it's part of Marine training, and maybe it was a bad idea or not, but if it's a policy concern, that's the end of the matter, however sympathetic it is. I don't, the First Circuit's opinion said, and I do think, that there are some decisions that are so constrained and so outrageous that the policy conditions are thrown out. So constrained and so outrageous. What constraints? The policy of the Marine Corps in providing this program is to make sure that the pulleys are physically and mentally prepared to be a Marine. And when you talk about this being a social event, was this not an event where the mental attitude, the mental preparedness of the pulley could be determined? And that's why the sergeant was saying, look, you got to come if you can. You got to come. If you don't come, you may be kicked out. I have a grandson who just got out of the Marine Corps, and when you're assigned to a certain duty, you don't go to your sergeant and say, gee whiz, Sarge, I got a tummy ache, or I've been throwing up. You say, yes, sir, where do I report? And one of the considerations in mental preparedness is, is this individual, this pulley, mature enough to understand the role that his physical problems may play in his obligation to the Marine Corps? And if he is really sick to a point where he shouldn't drive, does he have the mental and physical, does he have the mental preparedness to say, I'm sorry, sir, I'm not coming? I mean, I'm talking about various aspects of mental preparedness, and that was one of the purposes of the program. And it seems to me that this interchange really is dealing with quite a few aspects of this mental preparedness. Your Honor, I think that you raise some very, very good points, but I think that it's not a question of him having a tummy ache. It's a question, and with due respect to the court, if this is a private and he is on active duty and he tells his sergeant, sergeant, I'm sick, I've been throwing up, I can't fly today, I'm a danger to myself, I'm a danger to others. The sergeant would say, then you report to sick call or you stay home and you get some rest. What you don't do is tell an incapacitated young man who has been throwing up for 16 hours, who is suffering from migraines, who says he's dizzy, who says outright, just repeatedly, that he is not safe to drive. He predicted his own death. Okay. So when we look at a bunch of the other circuit decisions, they involve physical training activities. But the physical training cases all say, look, you know, maybe they pushed him too far or not, but it is susceptible to policy analysis whether you need to toughen someone up with physical training. Are you disagreeing with those cases? No, Your Honor. And the question is, why don't we take Judge Roth's question that this could be part of a mental training? Is there some reason why we have to view this as not part of testing readiness, obedience, et cetera? Maybe it was wrong, maybe it was troubling, but the courts aren't supposed to stick our noses into such things. Well, this court has taken a skeptical advance on the government or a skeptical look at the government's use of the discretionary exception. And when the decision is so outrageous, in Hajducik, the first circuit, Judge Canada, her decision said, you know, there may be a case. It's not this case. Hajducik had been pulled back after a skiing excursion, which had been approved by the Marine Corps, and his subsequent subordinate commander said, no, you get back here, we're going to train up. And he puts him under, you know, severe, more severe physical regimen. And the court properly said, that's okay, we don't interfere with that policy now. Why not use the same general approach to mental time? Because this is the extreme result that results, I see my time is up, if I may. Well, please, a sentence or two to finish that. The differential is the foreseeability of the harm. If you look at James Snow and Hajducik, they are looking at the Marine Corps' actions. And in every case, the Marines were taking care. In the James case, it was the Recruit Gomez. He collapsed unexpectedly. They got him treatment and they got him under a shade tree. In Hajducik, they could not foresee what had happened. Hajducik had completed the exercise, and only after did he suffer, you know, it was apparent that he had suffered injury. And in every one of those cases, the Marines did the right thing. They got care for the pulley or the invitee Gomez in the James case. In every one of those cases. In this case, it is the incomplete opposite. A total disregard for Tyler Gergler. And in the context. All right. Thank you. I see my time is up. Thank you. Is it Sturgill or Sturgill? Sturgill. Sturgill? All right. Rhymes with Virgil. Please, when you're ready. Thank you, Your Honor. But you don't have to type this in public. Okay. I'm sorry. I missed that. We don't have to expect it in poetry, I guess. All right. Thank you, Judge Roth. Lowell Sturgill from the Department of Justice representing the government. I want to begin by saying that Marine Corps pulley Tyler Gergler was loyal to the Marine Corps. He was dedicated to his country, and he acted with honor, courage, and commitment. His death is a tragic loss, I know, to his family, to his friends, and also to the Marine Corps. That being said, district court correctly dismissed this case pursuant to discretionary function exception. As we've heard this morning, the plaintiffs have conceded that they are not challenging our argument based on step one, discretionary function exception. What should we do about the facial versus factual motion to dismiss issue here? So the government's motion to dismiss argued those two grounds in the alternative. We basically said if you look only at the complaint, the documents cited in the complaint, and judicially those materials, that's enough to show this case is covered by discretionary function exception. But we also said, and this is kind of the way this works, if alternatively here are some additional materials that are not cited in the complaint, and on a factual basis, if you need to go there, that even shows even more strongly that the case is barred by DF. And what the district court did was basically stop at the facial level. It said, okay, well, just looking at the complaint, what's attached to the complaint, judicially those materials, it's clear that the exception applies. And so you can affirm on that ground. That's what we're asking. Please just affirm on the ground the district court gave. But if you choose to look at the extra record materials, that again shows even more strongly on a factual attack, the exception applies. As I understand the argument from your friend on the other side, even if we agree that the same test, if you will, should apply to mental readiness, and that this is a part of this, attending this event is a part of mental readiness. As I understand your friend on the other side, Mr. Sheldon, the last argument was essentially this discretion isn't boundless. There has to be something that is too far. And that's what the First Circuit was telling us. If you're told to jump off a cliff, that's a step too far. And that is something that the court should wade into. And he's saying, with respect to even this mental readiness, when you're told I am not safe to drive, it's not safe for me to get on the road and drive, this is the case, HIDUCIC, or whatever the name of the case was, might not have been enough. But this is the case that is enough. How do you respond to that? So at several levels, first of all, we believe that part of the HIDUCIC, and I'm mispronouncing it probably too, opinion is incorrect. As a matter of law, I would not recommend adopting that. The key point is that the text of the discretionary function exception says that the exception applies whether or not the discretion be abused. So essentially what the plaintiffs are here asking this morning, both in respect to this argument and in general, is that they're saying that, gee, this is negligence, and in fact this is gross negligence, and that should be outside the exception. But as a textual matter, that shouldn't matter because it amounts to just saying they abuse their discretion. Again, that's not a permissible analysis under the text of the exception. So we think that part of HIDUCIC is wrong. The text of the exception talks about whether the function or duty is discretionary, right? It's not about whether the particular facts involve abuse or extreme conduct. Well, it does say it applies whether or not the discretion is abused. I think that's the key language we're relying on. And I think that leaves you only one place, which is that you shouldn't be looking at whether the actions were negligence or not. Judge Roth, I think, wrote a really good concurring opinion in the SRP case where she said that an exception, this Court has a different exception to the exception this Court has adopted, and that's if the government knows of the specific risk and the remedial measures are only garden variety, that that counts as an exception. She said that doesn't make any sense either for the same reasons I gave you. But we don't fall within that because – I'm sorry, you were going to ask. I was just going to ask why you don't fall within that, yes. Well, because those cases were cases where one of the cases, did the government negligently not put up a guardrail on a path? Right. Another case was did the government negligently not put some lighting in a parking lot? Well, this is as far removed from that as you could get. This is basically the plaintiff asking the court to superintend the language with which a military recruiter or staff sergeant or drill instructor or somebody communicates with military personnel. And the court said never wanted to do that, and you can imagine why. It's just not something that – it's far beyond what a court would be comfortable doing. So for all those reasons, this case doesn't fall within Gotha and Cesenero. We assume those cases stand for what they say because they adopted that exception. But personally, I agree with Judge Roth that it was a mistake to go there. So your point is, though, once we determine that there's a rational nexus to the policy interest, that's the end of the analysis. There is no exception to the exception after that. The conduct doesn't matter. Once we make that determination, that is it. So with the caveat that the court in SRP did adopt this other limitation, which is that if government knows of a specific risk and the remedial measures are garden variety, right, that's something the court did say. We disagree with it, but the court did say it. So there is that, and we think for the reasons I just gave that this case clearly doesn't fall within that. But in terms of the HGSEC idea that there's something that, gee, it's just so outrageous that it shouldn't count, we disagree with that because, again, I think that leads you down the path you don't want to go, of considering essentially whether the government was negligent or not. Sorry. I also want to talk about the CNA case because that's from the circuit. I think it's really actually determinative without even talking about HGSEC. CNA involved an allegation that a military recruiter negligently pressured a recruit to join the Marine Corps in order to basically meet a quota, and this court rejected that under the discretionary function exception just out of hand. And I think for the same reasons the court did that here, it's a matter of circuit precedent that a claim like this is similarly barred because it's the same kind of thing. I mean, the nut of their case is that somebody in the Marine Corps wrongly pressured a pulley to do something, and so that's just CNA straight up. And the plaintiffs don't really have a response to that. They try to distinguish CNA in their reply brief by saying that the recruiter there was acting outside the scope of his employment. So the court did say that, but it didn't say that in the part of the opinion that addressed the discretionary function exception. There was a separate claim in that case that the recruiter also negligently let the recruit stay in his home, and the court said, oh, well, that was beyond the scope of employment, and that was the end of that claim. And then the court moved on to the claim of whether the recruiter negligently pressured the recruit, and it said that was barred by the discretionary function exception because, again, the court shouldn't be looking into micromanaging and supervising how military people talk to their personnel. So for all those reasons, CNA is just directly on point and I think resolves this case. Beyond that, looking at the district court filing, I think the court has already addressed this, but the plaintiffs only really made one argument. They didn't make anything on prong one. We know that. On prong two, the only thing they said with this event was a social event, and so it doesn't count. And that argument fails for just any number of reasons. First of all, they didn't cite anything, no facts to suggest that this actually was a social event, so it doesn't even pass ICBAL standards. Second, it wouldn't matter even if it was just a social event for the reasons that you have already discussed, and that is one of the documents that the government did put in the record is the Hold Harmless Agreement that Tyler Gergler signed, and that agreement shows that building camaraderie is a key to surviving basic training into unit cohesion. So that shows that these kinds of social events are a key part of the program. But beyond that, again, there are multiple reasons why that argument fails. And then the courts, again, just have never said that there's some kind of difference between a social event and something else. Oh, I'm sorry. A third argument is that the Kastner Declaration explains that he was not going up there for a mere social event. He was going up there to complete his validation process to be able to go to basic training. The plaintiffs didn't dispute that fact in district court. The district court noted they didn't even ask for discovery to be able to dispute it. So, again, it's sort of forfeiture upon forfeiture here at any level that you look at the case. That is really all I have. I have one other thing I'd like to talk about, if you don't mind. Yes, please. You could be helpful. So there's a question brought up in plaintiff's briefs about whether it's permissible under the law of the circuit for the government to make a factual attack on jurisdiction prior to filing an answer. And they cite a couple of cases, Askew, Mortenson, and Eichel, if I have it right. So we cited a case, one of Judge Roth's case, Vitalik, for the idea that it is permissible for the government to do that. We also cited CNA. And CNA said this. I think it's worth noting it. Page 145 and 146, CNA said the court may dismiss for lack of subject jurisdiction at any time, regardless of whether the moving party has filed an answer. And CNA cited a Justice Alito, then judge on the Third Circuit in Bernardi, who explained that that follows not only from, there's a Supreme Court opinion he cited, the KVOS, which you can find in the opinion, where the court did allow the government to make a factual challenge on jurisdiction prior to filing an answer. So the Supreme Court has settled the matter. And then the Federal Rule of Civil Procedure 12 basically says if the government's going to make, if it's going to move to dismiss for lack of jurisdiction, it ought to do that before it files an answer. So it just follows that you can make a factual attack prior to an answer. So these cases that the plaintiffs cite, it's a little hard to know why the court said something different, because they didn't really argue the point. They didn't cite anything. They didn't cite Bernardi or CNA. They just kind of in passing said, oh, well, you have to wait. You have to file an answer first. So the final thing is, I'm sorry for taking your time, but I don't think you really need to address that here, because, again, the district court just said on a facial challenge the discretionary function exception bar is this case. But if you want to, you could, I think, do the bench and bar favor by saying, well, look, CNA said what the rule is, and that is the rule. Up to you. I'm happy to discuss that, but I just think it's worth noting about as you write your opinion. Thank you, Mr. Sheldon. All right, Mr. Sheldon. I agree with my friend on the other side that whether it was a social event or a physical activity is of no moment. Frankly, it could have been any activity. It's part of the delayed entry program, which is why I think a focus is properly on what happened. Every case, Hidusic, James, Snow, all Pooley cases, all of them looked at what the Marines did. Here, the decision of Staff Sergeant Kastner is beyond policy analysis. We do not ask Marines, not when they have a tummy ache, if they're out at the beach, if they don't want to go to duty. Of course the Staff Sergeant is allowed to exercise his discretion. But when you're faced with the foreseeable consequence of somebody who has been up and sick and throwing up for 16 hours and dizzy and has migraines and says to him explicitly that he is not safe to drive, that decision is so far outside the bounds of what is reasonable, it is not subject to policy analysis. That is the fundamental issue in this case. It is Hidusic in the dicta. And the district court down below said it was dicta. And the district court was right. The court also noted that this court had not adopted Hidusic. Well, this is the case that the court should, and it should adopt Hidusic because of the outrageousness of countenancy. There is no Marine commander in the world that would say to his sergeants, No, it's okay to let your troop, your Marine drive while he's impaired, while he's incapacitated. Tyler predicted his own death, and he told Staff Sergeant Kaplan. Can I ask you to talk about the statute here? Your friend on the other side argues powerfully that the statutory FTCA exemption ends with whether or not the discretion is abused. You're making a powerful argument that the discretion was abused. But don't you run directly headlong into that language. But it also requires due care, as does the policy letter. How are those two things compatible? They're not. How can you, they're not compatible, so then doesn't the statute resolve it? I think you have to go to, and if you look at the James Snow and Hidusic cases, they look at what the Marines did in those cases. They said in James, they got him under a tree. In every case, they summoned help immediately. They recognized the harm. As soon as they did, they took action. Staff Sergeant Kastner did nothing except to perpetuate what happened in this case by influencing him, by threatening Tyler with discharge. And I submit to the court that Tyler had said, Hey, I'm going out to the beach, it's beach week. And Kastner had done the same thing, and tragedy would have resulted when we'd be here. No, but it's the outrageousness that he had told him. That is not subject to policy analysis. And if it is, if you're drunk in a bar over on Chestnut, and you're served with alcohol, and the bartender says, Oh, no, go ahead, here's your keys. You gave them to him, but go ahead. You got to get home. You got to get up for work tomorrow. That is so far outside the bounds. It is so far outside the bounds. It is not due policy analysis. And Hidusic reached that. They came close. They looked at it, but they said, No, that's certainly within a sense that even though we may find that it was abusive in nature, it's not enough. But there is some decisions that are going to be so outside the bounds. If a sergeant said, Jump off a 20-foot cliff on the concrete, it'll prove you're tough. Well, no problem. We will not allow for that. This court has always said and held the government strictly to this discretionary exception. And I submit that that's what this court should do today, and it should make the new law. This is so far outside the bounds that it's not subject to policy examination because it is so extreme. Because Kastner, I see my time is up, but Kastner knew. He knew Tyler was seriously, seriously ill. And the district court's decision below muddles that. Thank you. We thank both counsel for their argument and briefing, which is very helpful. We'll take the matter into advisory.